UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| EMPLOYERS PREFERRED INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:16-CV-79-SNLJ |
| HARTFORD ACCIDENT AND INDEMNITY COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM AND ORDER

Plaintiff Employers Preferred Insurance Co. ("Employers") brought this declaratory judgment action against defendant Hartford Accident and Indemnity Co. ("Hartford") seeking a judgment that Hartford has a duty to contribute an equal share of any liability for the workers' compensation benefits relating to the death of Mike Ernst. Both parties moved for summary judgment (Hartford, #18; Employers, #21). The motions are fully briefed and ready for disposition.

### I. Factual Background

The following facts are undisputed except where indicated. Paul Hoeckele is the president of Hoeckele's Bakery Incorporated ("the Bakery"). Mr. Hoeckele's wife, Angela Hoeckele, is the secretary, bookkeeper, and accountant for the Bakery. In 2013, Mrs. Hoeckele signed an application to renew the Bakery's workers' compensation insurance policy it had with Hartford. Hartford issued a policy ("Hartford Policy") that

1

provided coverage from July 20, 2013, to July 20, 2014.  Mrs. Hoeckele paid the Hartford Policy's premium.  Mr. Hoeckele was unaware that she paid the premium.

A few weeks after Hartford issued its policy, Mr. Hoeckele applied for a workers' compensation policy with Employers.  Employers issued a policy ("Employers Policy") that covered the same period as the Hartford Policy.  At this point, Mr. Hoeckele did not realize the Bakery was insured by two policies and thought he cancelled the Hartford Policy by applying with Employers.

Both policies provide:

**A. How This Insurance Applies**

This workers compensation insurance applies to bodily injury by accident or bodily injury by disease.  Bodily injury includes resulting death.

> 1. Bodily injury by accident must occur during the policy period.

…

**B. We Will Pay**

We will pay promptly when due the benefits required of you by the workers compensation law.

(#1-1 at 28; #1-2 at 50).

Both policies also include this "Other Insurance" provision:

We will not pay more than our share of benefits and costs covered by this insurance and other insurance or self-insurance.  Subject to any limits of liability that may apply, all shares will be equal until the loss is paid.  If any insurance or self-insurance is exhausted, the shares of all remaining insurance will be equal until the loss is paid.

(#1-1 at 31; #1-2 at 51).

The Bakery's employee, Mr. Ernst, was killed in the course of his employment on May 14, 2014—a date covered by both the Hartford Policy and the Employers Policy. A workers' compensation claim was filed against Employers. It agreed to cover and defend the Bakery.

Later in May 2014, an insurance agent informed Mr. Hoeckele that the Bakery still had coverage under the Hartford Policy. Mr. Hoeckele told the insurance agent he had cancelled the Hartford Policy. The insurance agent explained that the Hartford Policy was still active and that its premium had been paid.

Because Mr. Hoeckele had not intended to remain covered under the Hartford Policy, the insurance agent said Hartford would return the premium payment. Then, Mr. Hoeckele signed a cancellation form for the Hartford Policy. The parties dispute when Mr. Hoeckele intended for the cancellation to take effect.[1] For this Memorandum and Order, the Court assumes Mr. Hoeckele retroactively cancelled the Hartford Policy, effective July 20, 2013. Hartford then refunded the Bakery's premium.

To date, Employers has paid $163,148.49 because of Mr. Ernst's workers' compensation claim.

Employers seeks a judgment declaring that Hartford has a duty to contribute an equal share of any liability for the workers' compensation benefits relating to the death of

---

[1] There are two cancellation forms with Mr. Hoeckele's signature. One shows a July 20, 2013, cancellation date. The other shows July 20, 2014. Employers argues that it would be improper for this Court to consider the cancellation form with the July 20, 2013, cancellation date because the parties discussed only the form with the July 20, 2014, date during Mr. Hoeckele's deposition. Hartford submitted an affidavit from an account manager who claims that Mr. Hoeckele signed two cancellation forms. The account manager says the second form—the one with the July 20, 2014, cancellation date—was meant to prevent the Hartford Policy from automatically renewing when it expired on July 20, 2014.

Mr. Ernst. Employers pleads four counts in support of the declaratory judgment: Hartford's cancellation of the Bakery's policy is null and void (Count I), equitable contribution (Count II), equitable subrogation (Count III), or unjust enrichment (Count IV).

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Poller v. Columbia Broadcasting Sys., Inc.*, 368 U.S. 464, 467 (1962). Because "the interpretation and construction of insurance policies is a matter of law, . . . such cases are particularly amenable to summary judgment." *John Deere Ins. Co. v. Shamrock Indus., Inc.*, 929 F.2d 413, 417 (8th Cir. 1991).

Because this is a diversity case, the Court applies state substantive law and federal procedural law. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *see also Erie R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938). Employers's claim is based on a Missouri contract and an accident that occurred in Missouri. The parties appear to agree that Missouri law controls.

## III. Discussion

The parties seem to agree that the heart of this case is how, if at all, § 379.195.2 RSMo. applies to Mr. Hoeckele's agreement with Hartford to cancel the Hartford Policy.

4

This Court finds that § 379.195.2 applies to—and voids— Mr. Hoeckele's cancellation of the Hartford Policy. Thus, Employers is entitled to summary judgment under Count I.[2]

### A. The Cancellation of the Hartford Policy Is Void

Under Missouri law, "No such contract of insurance shall be cancelled or annulled by any agreement between the insurance company and the assured after the said assured has become responsible for such loss or damage, and any such cancellation or annulment shall be void." § 379.195.2 RSMo.

In Missouri, "The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning." *Howard v. City of Kansas City*, 332 S.W.3d 772, 779 (Mo. banc 2011) (*quoting Farmers' & Laborers' Co-op Ins. Ass'n v. Director of Revenue*, 742 S.W.2d 141, 145 (Mo. banc 1987)); *see also* Matthew Davis, Note, *Statutory Interpretation in Missouri*, 81 Mo. L. Rev. 1127, 1128–29 (2016).

Here, the legislative intent seems clear—the insured and insurer cannot cancel an insurance contract after the insured becomes liable for a covered loss. Hartford argues nothing in the statutory language prevents an employer from cancelling a *second* layer of insurance. But this argument stretches beyond the statutory text. The plain language bars any cancellation, no matter the layer. As Employers points out, § 379.195.2 is a blanket prohibition on post-loss cancellation agreements. Hartford also argues that § 379.195.2 is not designed to protect another insurance carrier that provides coverage for the loss. But

---

[2] The Court need not address Counts II, III, or IV.

this also stretches beyond the "words used in the statute," *Howard*, 332 S.W.3d at 779, and the legislature certainly could have prevented—had that been its intention—one insurer from relying on § 379.195.2 when seeking reimbursement from another. Nothing in the plain and ordinary meaning of the language used prevents this. *See, e.g.*, *Dyche v. Bostian*, 233 S.W.2d 721, 724 (Mo. banc 1950) ("We think this statute means just what it says, namely that *no* such contract shall be cancelled by *any* agreement between the insurer and the assured *after* the assured has become responsible for the loss, and *any* such cancellation shall be void.").

Accordingly, an insurer may rely on § 379.195.2 to void a post-loss cancellation agreement between another insurer and its insured. The agreement between Mr. Hoeckele and Hartford fits within the plain and ordinary meaning of the text. Thus, it is void.

Hartford relies on *Great Atlantic Insurance Co. v. Liberty Mutual Insurance Co.*, 576 F. Supp. 561 (E.D. Mo. 1983), for the proposition that § 379.195.2 does not apply when one insurance company sues another insurance company seeking reimbursement on a claim. That point is not well taken.

In *Great Atlantic*, an excess insurer sought reimbursement from a primary insurer. 576 F. Supp. at 563. The primary insurer—due to a clerical error—had issued two policies that covered the same territory. *Id.* Due to the parties' mutual mistake, the Court reformed the primary insurer's second policy so that it did not apply to the covered territory. *Id.* at 564. The Court explained that § 379.195 does not apply to a "case such as this." *Id.* at 565. This is likely because the injured plaintiff had no rights under the

6

second primary policy—or § 379.195.1—because the parties clearly agreed that only one policy would apply to the covered territory. *Great Atlantic* does not prevent an insurance company from relying on § 379.195.2 when seeking reimbursement from another insurer.

Hartford also argues that § 379.195.2 does not apply because the Hartford Policy was issued due to a mutual mistake.[3]

Under Missouri law, a contract "may be rescinded or reformed when there is a mutual mistake of material fact . . . ." *In re Estate of Hysinger*, 785 S.W.2d 619, 624 (Mo. App. 1990). "[A] mutual mistake occurs when both parties, at the time of contracting, share a misconception about a basic assumption or vital fact upon which they based their bargain." *Alea London Ltd. v. Bono-Soltysiak Enters.*, 186 S.W.3d 403, 415 (Mo. App. 2006) (*quoting* 27 *Williston on Contracts* 536, § 70:107 (4th ed. 2005)). If there is a mutual mistake, "both parties have done what neither intended to do." *Rainey v. Foland*, 555 S.W.2d 88, 91 (Mo. App. 1977). "[W]hen there is only evidence of a . . . a mutual mistake going to the very subject matter of the contract, there has been no meeting of the minds and therefore rescission or cancellation, rather than reformation, is the proper remedy." *Id.*

---

[3] Employers argues that Hartford waived this argument because Hartford failed to raise mutual mistake as an affirmative defense in its Answer. Federal Rule of Civil Procedure 8(c)(1) requires that "a party must affirmatively state any avoidance or affirmative defense," and Rule 9(b) specifies that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Hartford responds that it did raise mutual mistake as an affirmative defense by pleading that it properly cancelled the Hartford Policy and that the Hartford Policy was not in force with respect to Employers's claim. Hartford believes this, read in context, properly raised the affirmative defense of mutual mistake. In any event, this Court assumes, without deciding, that Hartford properly pled the mutual mistake affirmative defense.

7

Hartford claims there are three mistakes: (1) Mr. Hoeckele's assumption that the Hartford Policy was cancelled when he applied for the Employers Policy, (2) Mrs. Hoeckele's paying the Hartford Policy premium, and (3) Hartford's issuing the Hartford Policy that the Hoeckeles did not want. But none of these "mistakes" existed at the time of contracting—when Mrs. Hoeckele applied for the Hartford Policy—which Missouri law requires. *Alea London Ltd.*, 186 S.W.3d at 415.

Still, Hartford again relies on *Great Atlantic*. As noted, in *Great Atlantic*, the primary insurer issued two policies—one was meant to cover the insured's U.S. operations, and the other was meant to cover its Canadian operations. 576 F. Supp. at 563. Due to a clerical error, the second policy covered both the Canadian and U.S. operations. *Id.* Because the parties agreed that the second policy would cover only the Canadian operations, the Court reformed the second policy. *Id.* at 564.

Here, in contrast, the Hartford Policy does reflect the parties' intentions at the time of contracting. Mrs. Hoeckele intentionally applied for the Hartford Policy and paid the premium. Then, Hartford intentionally issued the policy. The three mistakes Hartford claims are unlike the mistake in *Great Atlantic*—where the parties agreed on their mutual intentions (at the time of contracting), but those intentions were not reflected in the contract because of a clerical error. Here, both parties did what they intended to do, rather than doing what neither intended to do. *Rainey*, 555 S.W.2d at 91.

In this case, the proper question seems to be whether an insurance policy should be cancelled or rescinded—due to mutual mistake—when the insured mistakenly bought a second policy covering the same loss. Employers claims *Rendelman v. Levitt*, 24

8

S.W.2d 211 (Mo. App. 1930) (per curiam), addressed this question and held that an insured's mistaken purchase of a second policy was not a mutual mistake justifying rescission. Hartford disagrees. Hartford argues that it has no duty to provide coverage because Mr. Hoeckele was unaware the policy even existed at the time of the accident.

But *Rendelman* stands for the proposition that a second insurance policy cannot be cancelled due to mutual mistake, even if the insured entered into the second contract without knowing it was already insured. *Rendelman*, 24 S.W.2d at 215. And if the second contract cannot be cancelled, it follows that the original contract—here, the Hartford Policy—cannot be cancelled due to mutual mistake. There is no double insurance, like when the parties enter into the second contract, at the time of the original contract. Like the second policy in *Rendelman*, the Hartford Policy "expressed precisely the agreement intended by both the insurer [Hartford] and the insured [Mrs. Hoeckele]." *Id.*

Thus, the Hartford Policy was not issued due to a mutual mistake that justifies cancelling the Hartford Policy.

### B. The Hartford Policy Was Effective at the Time of the Accident

The Hartford Policy provided coverage from July 20, 2013, to July 20, 2014. Mr. Ernst was killed on May 14, 2014—a date within the covered period. The cancellation agreement between Mr. Hoeckele and Hartford is void. And the Hartford Policy was not issued due to a mutual mistake that justifies cancelling it. Thus, the Hartford Policy was effective at the time of the accident.

### C. Hartford Has a Duty to Defend and Indemnify the Bakery

9

The Hartford Policy provides:

> This workers compensation insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.
>
> > 1. Bodily injury by accident must occur during the policy period.
> >
> > …
>
> We will pay promptly when due the benefits required of you by the workers compensation law.

(#1-2 at 50). Hartford does not argue that Mr. Ernst's claim is not covered under its policy. The dispute is only whether the Hartford Policy was effective when the accident occurred. Thus, Hartford has a duty to defend and indemnify the Bakery under the terms of the Hartford Policy.

### D. Hartford Must Pay Half the Costs and Benefits Relating to Mr. Ernst's Workers' Compensation Claim

Again, both policies include this "Other Insurance" provision:

> We will not pay more than our share of benefits and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that may apply, *all shares will be equal until the loss is paid*. If any insurance or self-insurance is exhausted, the shares of all remaining insurance will be equal until the loss is paid.

(#1-1 at 31; #1-2 at 51) (emphasis added). Hartford does not dispute that, if the Hartford Policy was effective at the time of the accident, it must pay half of all expenses incurred defending the claim, as well as the benefits due under the claim. Thus, Hartford must pay half the defense expenses and the benefits—those incurred before and after this judgment—relating to Mr. Ernst's workers' compensation claim.

### IV. Conclusion

Employers's motion will be granted. Hartford's motion will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff Employers's motion for summary judgment (#21) is **GRANTED**.

**IT IS FURTHER ORDERED** that defendant Hartford's motion for summary judgment (#18) is **DENIED**.

Dated this   27th   day of September, 2017.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE